## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BLACKHAWK DEVELOPMENT, LLC,

Plaintiff,

-against-

KRUSINSKI CONSTRUCTION COMPANY,

Defendant.

Civil Action No:

**COMPLAINT**

Plaintiff, BLACKHAWK DEVELOPMENT, LLC, by and through their counsel, Zetlin & De Chiara LLP and Smith Currie & Hancock, LLP, by way of Complaint against KRUSINSKI CONSTRUCTION COMPANY, allege as follows:

### THE PARTIES AND THE PROJECT

1.      Plaintiff Blackhawk Development, LLC ("Blackhawk") is a citizen of Delaware and Texas, because its sole member is a corporation incorporated in Delaware with its principal place of business at 6535 State Highway 161, Irving, Texas 75039.

2.      Plaintiff desired to have a Distribution Center ("Distribution Center" or "building") built in Orange County, Municipality of Hamptonburgh, New York.

3.      Defendant Krusinski Construction Company ("KCC") is a citizen of Illinois, because it is a corporation incorporated in Illinois with its principal place of business in Illinois.

4.      This Court has specific personal jurisdiction over KCC because pursuant to its contract with Blackhawk, it performed site development work and constructed a Distribution Center in Hamptonburgh, New York for Blackhawk (the "Project"), and the claims herein arise out of that work.

5.      This court has subject matter jurisdiction in this action pursuant to 28 U.S.C. §1332, because the amount at issue in this action exceeds $75,000 and the parties are citizens of different

states. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in the Southern District of New York, where the Project is located.

6.       On or about April 28, 2015, Plaintiff contracted with KCC to construct the Project according to plans and specifications set forth in a written contract (the "Prime Contract"). KCC has a copy of the Prime Contract (including the exhibits), and it is not attached here due to size. Plaintiff will provide a copy of the Prime Contract to KCC upon request.

7.       KCC performed construction of the Project under the Prime Contract between approximately April 28, 2015 and substantial completion in late 2016.

8.       On or about June 17, 2016, a water pipe connection that had been installed by KCC and/or its subcontractor(s) near a break room in the Distribution Center leaked water into the Distribution Center for several hours.

9.       Plaintiff alleges that as a result of the water leak and/or the work of KCC and/or the work of its subcontractors, the Distribution Center suffered damage to its surfaces and flooring; subsidence and/or cracking to flooring and walls; damage to support below flooring and layers below floorings; consolidation and/or subsidence of subsurface soils and/or material.

10.      Plaintiff further alleges that as a result of the water leak and/or the work of KCC and/or the work of KCC's subcontractors, the parking lot for the Distribution Center suffered damage to its surfaces; subsidence and/or cracking to the parking lot pavement and subsurface areas; and/or consolidation and/or subsidence of subsurface soils and/or material.

11.      Plaintiff further alleges that as a result of the water leak and/or the work of KCC and/or the work of KCC's subcontractors, the Northeast corner of the Distribution Center suffered damage to its surfaces and flooring; subsidence and/or cracking to flooring and walls; damage to support below flooring and layers below floorings; consolidation and/or subsidence of subsurface soils and/or material.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

12.     Plaintiff incorporates by reference paragraphs 1-11 as though fully set forth herein.

13.     Plaintiff and KCC contracted for KCC to build the Project as set forth in the Prime Contract.  Exhibit A of the Prime Contract ("General Conditions") specifies that it is governed by New York law.

14.     Plaintiff performed the duties required of it under the Prime Contract.

15.     The Prime Contract provides at Paragraph 1.2: "Contractor has examined the Contract Documents and the proposed site and represents that it is familiar with all aspects of the Work."  In paragraph 1.2.2 of the General Conditions (Exhibit A) to the Prime Contract, it similarly states: "Execution of the Agreement by Contractor is a representation that Contractor has visited the site, become familiar with local conditions under which the Work is to be performed and correlated personal observations with requirements of the Contract Documents."

16.     Consistent with Paragraph 1.2 of the Prime Contract, KCC was provided the November 24, 2014 Project Geotechnical Report by Langan Engineering (the "Langan Soils Report") that detailed specifications for composition and type of fill; prohibitions on certain contents of fill, such as clay, rocks and boulders; compaction requirements; dimensions of lifts (recommended 8"); and admonitions regarding moisture penetration and protection from moisture due to "fines", a description of a type of soil present in the makeup of the on-site soil. KCC also prepared and presented Outline Specifications to Plaintiff, which was made part of the Prime Contract and attached as Exhibit B to the Prime Contract. The Outline Specifications show that KCC was aware that it would be using on-site materials as fill, and that KCC had the opportunity to review the site, the contract documents under negotiation, and the specifications for the Project.

17.     Paragraphs 3.2.2 ("Performance Under Contract Documents"), 3.2.3 ("Notice of Inconsistency"), 3.2.4 ("Field Measurements and Conditions"), and 3.2.5 ("Compliance With Contract Documents and Agreement") of the General Conditions of the Prime Contract further required KCC to: a) install all Work in conformity with approved Drawings and Specifications using its best knowledge as to the interpretation or application of applicable codes (3.2.2); b) notify

3

Plaintiff of any error or inconsistency (3.2.3); c) take field measurements and verify field conditions and carefully compare such field measurements and conditions and other information known to KCC with the Contract Documents before commencing activities (3.2.4); and d) perform the Work in accordance with the Contract Documents and approved submittals (3.2.5).

18.     KCC breached its duties under the Prime Contract by its omissions and/or acts, including, but not limited to the following: a) failing to adhere to requirements and/or specifications for composition and type of fill on-site; b) failing to adhere to prohibitions on certain contents of fill; c) failing to adhere to requirements and/or specifications as to compaction of soil; c) failing to adhere requirements and/or specifications as to building support and/or dimensions of lifts or other supports under the building to be constructed at the Project; d) failing to adhere to requirements and/or specifications regarding moisture penetration and/or protection from moisture; e) failure to adhere to requirements and/or specifications regarding contaminants in soil at the site; and f) failure to properly install fittings, couplings, pipes, and/or equipment and/or failure to install proper fittings, couplings, pipes, and/or equipment.

19.     On or about June 17, 2016, Plaintiff discovered the failure of the water pipe connection and/or other plumbing components or equipment in the Distribution Center at the Project, which caused damage to the Distribution Center in and under the break room area. The water seeped under the building's floor causing substantial settlement to the building's foundation. This damage was a foreseeable consequence of KCC's failure to comply with the plans and specifications. The water may have also contributed to the parking lot damage.

20.     As a result of KCC's breaches of its duties under the Prime Contract, Plaintiff has been damaged in an amount to be proven at trial, but not less than about $1,500,000, which includes costs to date to repair the defects.

## SECOND CAUSE OF ACTION
### (Breach of Warranty)

21.     Plaintiff incorporates by reference paragraphs 1-20 as though fully set forth herein.

22.     Under the Prime Contract, KCC provided an express written warranty to Plaintiff that, among other requirements, materials and equipment furnished under the Prime Contract would be of the specified quality; work would be free of defects and would conform with requirements of the Prime Contract; work would be done in a good and workmanlike manner; and that work not conforming to these requirements would be considered defective.

23.     The warranty provisions of the Prime Contract are found at Section 3.5 of the General Conditions, subsection 3.5.1 of which provides:

> 3.5.1 Contractor warrants to Owner that materials and equipment furnished under the Agreement will be of the specified quality and new unless otherwise required or permitted by the Contract Documents or Owner's approval, that the Work will be free from defects and will conform with the requirements of the Contract Documents. Contractor warrants that all the Work shall be done in a good and workmanlike manner. Work not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. If required by Owner, Contractor shall furnish satisfactory evidence as to the kind and quality of materials and equipment. Contractor's warranty is not transferable. Contractor's obligations in regard to defective Work or Work not conforming with the requirements of the Contract documents are set forth in Article 12 below.

24.     Pursuant to the Prime Contract, Plaintiff timely provided KCC written notice that materials and equipment furnished under the Prime Contract were not of the specified quality; work was not free of defects and/or failed to conform and/or perform with requirements of the Prime Contract; work was not done in a good and workmanlike manner; and/or that work failed to conform to the requirements in the Prime Contract and was considered defective.

25.     Plaintiff performed all requirements required to make a warranty claim to KCC.

26.     KCC breached its duties under the warranty provisions of the Prime Contract and failed to correct, replace, and/or repair its defective parts, equipment and/or work as required under the Prime Contract.

27.     As a result of KCC's failure to perform its duties under the warranty provisions of the Prime Contract, Plaintiff has been damaged in an amount to be proven at trial, but not less than $1,500,000, which includes costs to date to repair the defects.

28.     The failure of the parts, equipment, and/or work provided by KCC under the Prime Contract were a substantial factor in the harm caused to Plaintiff.

### THIRD CAUSE OF ACTION
**(Negligence)**

29.     Plaintiff incorporates by reference paragraphs 1-28 as though fully set forth herein.

30.     KCC was negligent by its omissions and/or acts in its performance of its duties under the Prime Contract and/or by failing to adhere to the standard of care of a contractor performing work on the Project as set forth above.

31.     KCC's negligence was a substantial factor in causing damage to Plaintiff.

32.     Plaintiff was harmed as a result of KCC's negligence in an amount exceeding $1,500,000, which includes costs to date to repair the defects.

### RELIEF SOUGHT

WHEREFORE, Plaintiff demands judgment against Defendant on all causes of action as follows:

1.     For damages in a minimum amount of $1,500,000 plus interest at the legal rate;

2.     For attorneys' fees and expert witness fees pursuant to Section 13.5.1 of the General Conditions to the Prime Contract in an amount to be proven at trial;

3.     For judgment in favor of Plaintiff;

4.     For costs and expenses of suit herein; and

5.     For such other and further relief as the court may deem proper together with any

other relief the Court finds to be just and proper.

Dated:  June 14, 2019

*/s/ Bill P. Chimos*

Bill P. Chimos (#BC9381)
Michael J. Vardaro (#MV7228)
ZETLIN & DE CHIARA LLP
801 Second Avenue
New York, New York 10017
mvardaro@zdlaw.com
Tel: 212.300.1429

Daniel F. McLennon, NYSBA# 962720
Smith Currie & Hancock, LLP
275 Battery Street, Suite 1300
San Francisco, CA 94111
dfmclennon@smithcurrie.com
Tel: 415.394.6688

***Attorneys for Plaintiff***
***Blackhawk Development, LLC***