UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLACKHAWK DEVELOPMENT, LLC,
                                        Plaintiff,
v.

KRUSINSKI CONSTRUCTION CO.,
                                        Defendant.

KRUSINSKI CONSTRUCTION CO.,
                                      3d Party Plaintiff,
v.
COMPANY, INC., CBRE INC., MCKESSON
CORPORATION, SOLOCITO & SON
CONTRACTING CORP., GREENWORLD
LANDSCPE & IRRIGATION INC.
RECLAMATION, LLC, THOMAS J. KEMPTON,
JR. INC., and LOIODICE EXCAVATING, INC,
                                      3d Party Defendants,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __3/31/2021__

19 CV 5590 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Blackhawk Development, LLC ("Blackhawk") brought this action against Krusinski Construction Company ("Krusinski" or "KCC") alleging breach of contract, breach of warranty and negligence in its construction, as general contractor, of a Distribution Center in Orange County, New York. (ECF No. 1.) Krusinski filed a Third-Party Complaint against various parties, including CBRE, Inc. ("CBRE") and McKesson Corporation ("McKesson") (ECF No. 14), which it amended (ECF No. 75). Currently before the Court are Third-Party Defendants McKesson and CBRE's motions to dismiss the Amended Third-Party Complaint. (ECF Nos. 124 and 162.) For the following reasons, the motions are GRANTED.

## BACKGROUND

      The facts herein are drawn from the Amended Third-Party Complaint ("ATPC" (ECF No. 75)), and Blackhawk's underlying complaint ("Complaint" (ECF No. 1)) and are presumed true for purposes of this motion.

**I.      Blackhawk's Allegations Against Krusinski**

Blackhawk hired Krusinski for construction services at its Distribution Center in Orange County, New York ("Distribution Center," "the Project," or "the Property"). (ATPC ¶ 36.) Blackhawk alleges that its contract with Krusinski required Krusinski to

> a) install all Work in conformity with approved Drawings and Specifications using its best knowledge as to the interpretation or application of applicable codes; b) notify Plaintiff of any error or inconsistency; c) take field measurements and verify field conditions and carefully compare such field measurements and conditions and other information known to KCC with the Contract Documents before commencing activities; and d) perform the Work in accordance with the Contract Documents and approved submittals.

(Compl. ¶ 17 (citations omitted).) Krusinski alleges that it "relied exclusively upon [Blackhawk], its agent(s) or its parent company for the design, planning and testing of groundwork and soil compaction relative to excavating and backfilling at the property." (ATPC ¶ 39.) Krusinski retained subcontractors to perform certain aspects of work for Blackhawk. (ATPC ¶ 37.)

Beginning on or about June 17, 2016, Blackhawk suffered damage to its Distribution Center located in Orange County, New York. (ATPC ¶ 35.) Specifically, "on or about June 17, 2016, a water pipe connection that had been installed by KCC and/or its subcontractor(s) near a break room in the Distribution Center leaked water into the Distribution Center for several hours." (ATPC ¶ (quoting from Compl. ¶ 8).) "'[A]s a result of the water leak and/or the work of KCC and/or the work of its subcontractors, the Distribution Center . . . parking lot . . . . [and] Northeast corner' sustained property damage." (ATPC ¶ 43 (quoting Compl. ¶¶ 9-11).)

Blackhawk sued Krusinski for "costs to date to repair the defects." (ECF No. 1.) Blackhawk's Complaint alleges that:

> KCC breached its duties under the . . . Contract by its omissions and/or acts, including, but not limited to the following: a) failing to adhere to requirements and/or specifications for composition and type of fill on-site; b) failing to adhere to prohibitions on certain contents of fill; c) failing to adhere to requirements and/or

2

specifications as to compaction of soil; c) failing to adhere requirements and/or specifications as to building support and/or dimensions of lifts or other supports under the building to be constructed at the Project; d) failing to adhere to requirements and/or specifications regarding moisture penetration and/or protection from moisture; e) failure to adhere to requirements and/or specifications regarding contaminants in soil at the site; and f) failure to properly install fittings, couplings, pipes, and/or equipment and/or failure to install proper fittings, couplings, pipes, and/or equipment.

(Compl. ¶ 18.) Blackhawk further alleges that Krusinski "and/or its subcontractor(s)" were responsible for the work related to the leaking water pipe. (ATPC ¶ 45 (quoting Compl. ¶¶ 8-11)), and that negligent installation of the water pipe connection caused various forms of property damage (ATPC ¶ 44).

## II. Krusinski's Allegations Against McKesson

McKesson is the parent company of Blackhawk. (ATPC ¶ 40.) Prior to and including June 17, 2016, McKesson "performed construction management and/or oversight and approval of work in relation to the construction of [Blackhawk's] Distribution Center." (ATPC ¶ 66.) During the Project, McKesson was "aware of the content of the reports and correspondences from KCC to CBRE, INC., concerning the excavation and backfilling relative to the Project." (ATPC ¶ 67.) Blackhawk, on behalf of McKesson, "directly retained" geotechnical engineering firms, structural engineering firms, and architectural firms in relation to the Project. (ATPC ¶¶ 68-73.) "As early as June 2, 2015, KCC recommended that MCKESSON CORPORATION consult with ADVANCE TESTING COMPANY, INC. for guidance and/or oversight including soil compaction testing relative to excavation work at the Project." (ATPC ¶ 74.) "As early as June 2, 2015, MCKESSON CORPORATION, through its agents and/or employees, was on notice that the property was subject to at least one inch of settlement within a year." (ATPC ¶ 75.)

"During the course of the Project, KCC delegated exclusive responsibility to MCKESSON CORPORATION for one or more duties within KCC's agreement with Plaintiff." (ATPC ¶ 76.)

3

**III.     Krusinski's Allegations Against CBRE**

CBRE acted as Blackhawk's agent during the construction of the Distribution Center. (ATPC ¶¶ 41, 58.) Prior to and including June 17, 2016, CBRE "performed certain construction management and/or oversight and approval of certain work in relation to the construction" of Blackhawk's Distribution Center. (ATPC ¶ 57.) CBRE employees used e-mail addresses with the suffix "@mckesson.com" during the course of the construction of the Distribution Center. (ATPC ¶ 59.) CBRE "directly retained" geotechnical engineering, structural engineering, and architectural firms in relation to the Project. (ATPC ¶¶ 60-62.)

"As early as June 2, 2015, KCC requested that CBRE, INC. consult with the Plaintiff's subcontractor, ADVANCE TESTING COMPANY, INC. for guidance and/or oversight including soil compaction testing." (ATPC ¶ 63.) "As early as June 2, 2015, CBRE., INC., through its agents and/or employees, was on notice that the property was subject to at least one inch of settlement within a year." (ATPC ¶ 65.)

Krusinski further alleges that during the course of the Project, Krusinski "delegated exclusive responsibility to CBRE, INC. for one or more duties within KCC's agreement with Blackhawk." (ATPC ¶ 65.)

**IV.     Procedural History**

Blackhawk filed this action against Krusinski in June 2019. (ECF No. 1.) Krusinski answered on October 15, 2019 (ECF No. 13) and filed a Third-Party Complaint against CBRE, McKesson, and others (ECF No. 14). The Court granted Krusinski leave to amend the Third-Party Complaint and granted McKesson and CBRE leave to file separate motions to dismiss. (Minute Entry Dated Feb. 13, 2020.) Krusinski's Amended Third-Party Complaint states claims for common law indemnification (ATPC ¶¶ 181-86), contribution (ATPC ¶¶ 187-90), and negligence

(ATPC ¶¶ 191-97) as against McKesson, and common law indemnification (ATPC ¶¶ 159-64), contribution (ATPC ¶¶ 165-68), breach of implied warranty (ATPC ¶¶ 169-73), and negligence (ATPC ¶¶ 174-80) as against CBRE. McKesson and CBRE's motions to dismiss are now before the Court. (ECF Nos. 124 and 162.)

## LEGAL STANDARD

Under Rule12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).

## DISCUSSION

### I.  Common Law Indemnification

CBRE avers that since Blackhawk seeks to hold Krusinski liable for its own breaches of contract rather than for the actions of CBRE, Krusinski's indemnification claim against CBRE

5

must fail. (CBRE Mem. (ECF No. 164) at 7-9.) McKesson avers that because Krusinski has not alleged that McKesson acted as Krusinski's subcontractor, Krusinski's indemnification claim against McKesson must fail. (McKesson Mem. (ECF No. 124-4) at 4-5.)

The basic principles of common law indemnity "permit one who is held vicariously liable solely on account of the negligence of another to shift the entire burden of the loss to the actual wrongdoer." *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453 (1st Dep't 1985). In New York, a party seeking common law indemnity "must show that it may not be held responsible to any degree." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 25 (1985); *see also Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996) ("common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff"). In other words, "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Dormitory Auth. of the N.Y. v. Caudill Rowlett Scott*, 160 A.D.2d 179, 181 (1st Dep't 1990) (quoting *Trustees of Columbia Univ.*, 492 N.Y.S.2d at 375)). To state a claim for indemnification, a party must allege that it "delegated exclusive responsibility for the duties giving ain rise to the loss to the party from whom indemnification is sought, and must not have committed actual wrongdoing itself." *Bd. of Managers of Olive Park Condo. v. Maspeth Properties, LLC*, 95 N.Y.S.3d 344, 346 (2d Dep't 2019) (internal quotation mark omitted); *accord 17 Vista Fee Assocs. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (1st Dep't 1999). A party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual supervision on its own part. *See McCarthy v. Turner Const., Inc.*, 17 N.Y.3d 369, 377-78 (2011).

The Amended Third-Party Complaint plainly does not state a plausible indemnification **claim** against either CBRE or McKesson. Krusinski's cursory allegations that it "delegated exclusive responsibility" for "one or more duties" to CBRE and McKesson, without specifying which duties is insufficient. To state a claim for common law indemnity, a plaintiff must allege that it delegated "exclusive responsibility for the duties giving rise to the loss," *Bd. of Managers of Olive Park Condo.*, 95 N.Y.S.3d at 346, or that "it may not be held responsible to any degree," *Rosado*, 66 N.Y.2d at 25; *see e.g.*, *Morris v. Home Depot USA*, 59 N.Y.S.3d 92, 96 (2d Dep't 2017) (affirming dismissal of common law indemnification claim where Home Depot failed to establish, that it was not negligent, *i.e.* that Home Depot did not create the dangerous condition that allegedly caused the injured plaintiff's accident); *Edge Mgt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 366-67 (1st Dep't 2006) (affirming dismissal of a common law indemnification claim in a case involving mold in a condominium unit leased by the plaintiff where it was possible that defendant/third-party plaintiff landlord could be found liable in the main action). Krusinski's cursory allegations regarding the duties delegated to CBRE and McKesson are plainly inadequate. Accordingly, the Court must dismiss the common law indemnification claims against both CBRE and McKesson for failure to assert a plausible claim**.**

## II.   Negligence

To prevail on a negligence claim under New York law, a plaintiff must establish : (1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) the breach was the proximate cause of the plaintiff's injuries; and (4) the existence of damages. *Vega v. Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006). In other words, to sustain a cause of action in negligence, the claimant must prove that a legal duty was owed to him, that this duty was not performed or was improperly performed, and that the injury resulted as a consequence of the defendant's failure to

properly perform that duty. *Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523 (1984). "In any negligence action, the threshold issue before the court is whether the defendant owed a legally recognized duty to the plaintiff." *Gilson v. Metro. Opera*, 5 N.Y.3d 574, 576 (2005).

To establish a duty, claimant must allege a "specific duty" running to that claimant and "not merely a general duty to society." *Hamilton v. Berretta Corp.*, 96 N.Y.2d 222, 232, 750 (2001). Further, negligence is actionable only where there is a breach of duty owed to one who seeks to rely on that duty. *See Daily v. Tops Mkts.*, LLC, 134 A.D.3d 1332, 1333 (3d Dept. 2015) (holding that grocery store owed no affirmative duty to aid a person who died from intoxication and hypothermia after being left in a vehicle in the store's parking lot, even when store employees were advised that the person needed assistance because the person's presence in the parking lot was unrelated to any store business). A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 383 (1987). There is no cause of action for negligent performance of a contract. *Johnson City Cent. Sch. Dist. v. Fid. & Deposit Co. of Maryland*, 641 N.Y.S.2d 426 (3d Dep't 1996).

Further, "[a] parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises complete dominion and control over the subsidiary." *Montes Serrano v. New York Times Co.*, 19 A.D.3d 577, 578 (2d Dep't 2005) (*Billy v. Consol. Mach. Tool Corp.*, 51 N.Y.2d 152 (1980) (holding that fact that employer of plaintiff's fatally injured decedent was a wholly–owned subsidiary was insufficient in itself to support imposition of liability upon parent corporation for acts of subsidiary; liability required allegation that parent exercised necessary control over subsidiary)).

Assuming without deciding that Krusinski's negligence claims are timely, they nonetheless fail. Krusinski's cursory allegations that that McKesson and CBRE "had a duty to KCC" as Blackhawk's parent company and agent, respectively, "to manage and oversee the work of Plaintiff's subcontractors, agents and engineers," (ATPC ¶¶ 175, 192) are insufficient to allege any duty beyond a contractual obligation, which "standing alone, will generally not give rise to tort liability in favor of a third party," *Espinal v Melville Snow Contrs.*, 746 N.Y.S.2d 120, 122 (2002). Courts have dismissed claims almost identical to Krusinski's under very similar circumstances. *E.g.*, *City of New York v. Aetna v. Ascot v. Park Avenue Contracting, Inc.*, 1997 WL 379704 (SDNY 1997) (dismissing a negligence claim against a construction manager where the duty of due care allegedly arose from the construction manager's managing duties, as opposed to its work-product related design duties). Additionally, McKesson cannot be held liable for negligence merely because the contracts with some of the contractors were signed by McKesson or it was "aware" of some reports; rather, to state a claim against McKesson for Blackhawk's negligence, Krusinski would need to allege "complete dominion and control over the subsidiary." *Montes Serrano*, 19 A.D.3d at 578. Krusinski has not done so.

Accordingly, the Court must dismiss Krusinski's negligence claims against both CBRE and McKesson for failure to assert a plausible claim.

**III.  Contribution**

CPLR 1401 provides in pertinent part that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." CPLR 1401. When determining whether a party can seek contribution under CPRL 1401, the "touchstone is not the nature of the

9

claim in the underlying complaint but the measure of damages sought therein." *Children's Corner Learning Ctr. v. A. Miranda Constr.*, 64 A.D.3d 318 (1st Dep't 2009). Contribution is unavailable when a plaintiff seeks recovery solely for economic loss. *Rockefeller Univ. v. Tishman Constr. Corp.*, 240 A.D.2d 341, 659 N.Y.S.2d 460 (1st Dep't 1997); *see Board of Educ. of the J Constr. City Sch. District v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 26 (1987) (holding that damages solely economic in nature preclude claims for contribution). Further, "attempts at casting" a claim in tort when they are based on breach of contract will not lead to damages under CPLR 1401. *Structure Tone Inc. v. Universal Svs. Grp. Ltd.*, 87 A.D.3d 909, 911 (lst. Dep't 2011) (finding that economic loss in the form of water damage resulting from the breach of contract between general contractor and subcontractor without any allegation of personal injury does not constitute an "injury to property" under CPLR 1401).

Krusinski's contribution claims fail for three reasons. First, the alleged duty of care arose in connection with contractual obligations. Second, the damages sought by Blackhawk for all three claims—breach of contract, breach of warranty, and negligence—are identical: "costs to date to repair the defects," which is how courts define "the appropriate measure of damages for defective construction" under a construction contract. *Marino v. Lewis*, 17 A.D.3d 325, 326 (2d Dep't 2005); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 261-62 (1998) (holding that "the appropriate measure of damages [for breach of a construction contract] is the cost to repair the defects or, if the defects are not remediable, the difference in value between a properly constructed structure and that which was in fact built"). Third, Krusinski is mistaken that the inclusion of a negligence claim in either the Complaint or the Amended Third-Party Complaint converts the nature of the damages because "merely charging a breach of a 'duty of due care'. . . does not, without more, transform a simple breach of contract into a tort claim" *Bd. of Educ. of*

*Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 29 (1987). Accordingly, Krusinski has failed to plausibly assert a contribution claim against either McKesson or CBRE.

### IV. Breach of Implied Warranty

Since "there is no cause of action for breach of warranty where the defendant has only provided a service," *Gutarts v. Fox*, 104 A.D.3d 457, 459 (1st Dep't 2013), and the Amended Third-Party Complaint clearly alleges that CBRE provided services, not goods, in connection with the Project, the Court must dismiss the claims against CBRE for breach of implied warranty. *See Gutarts*, 104 A.D.3d at 459-50 (dismissing breach of implied warranty claim against party hired to file documents); *see also Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 105 (1954) ("It has long been recognized that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act," and, therefore, "[t]he essence of the contractual relationship between hospital and patient is . . . human skill and physical materiel of medical science . . . . [c]oncepts of purchase and sale cannot separately be attached to the healing materials -- such as medicines, drugs or, indeed, blood -- supplied by the hospital for a price as part of the medical services it offers. That the property or title to certain items of medical material may be transferred, so to speak, from the hospital to the patient during the course of medical treatment does not serve to make each such transaction a sale.").

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss and dismisses all of Krusinski's claims. Since the Court has already granted Krusinski leave to amend its Third-Party Complaint after a conference during which the precise issues raised in CBRE and

11

McKesson's motions were raised (Minute Entry dated February 13, 2020), and the Court believes that further amendment would be futile, the claims against CBRE and McKesson are dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 124 and 162 and terminate CBRE and McKesson as parties in this case.

Dated: March 31, 2021
       White Plains, New York

SO ORDERED:

_____
HON. NELSON S. ROMÁN
UNITED STATES DISTRICT JUDGE