UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BLACKHAWK DEVELOPMENT, LLC,

                Plaintiff,

-against-

KRUSINSKI CONSTRUCTION CO.,

                Defendant.

---

KRUSINSKI CONSTRUCTION CO.,

                Third-Party Plaintiff,

-against-

BOYCE EXCAVATING CO., INC., ADVANCE TESTING COMPANY, INC., SOLICITO & SON CONTRACTING CORP., and GREENWORLD LANDSCAPE & IRRIGATION, INC.,

                Third-Party Defendants.[1]

No. 19 Civ. 5590 (NSR)
OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 04/18/2022

NELSON S. ROMÁN, United States District Judge:

Plaintiff Blackhawk Development, LLC ("Blackhawk") brought this action against Krusinski Construction Company ("Krusinski" or "KCC") alleging breach of contract, breach of warranty and negligence in its construction, as general contractor, of a Distribution Center in Orange County, New York. (Compl., ECF No. 1.) KCC filed a Third-Party Complaint against various parties, including Advance Testing Company, Inc. ("ATC") and Greenworld Landscape & Irrigation, Inc. ("Greenworld") (ECF No. 14), which it later amended (Am. Third-Party Compl., ECF No. 75). In its Amended Third-Party Complaint (hereinafter, "ATPC"), KCC asserts claims

---

[1] While this action involves numerous other crossclaims and counterclaims between the different parties in this case, for the sake of simplicity and clarity, the Court only includes the relevant parties and claims discussed in this Opinion and Order.

of common law indemnification, contribution, and breach of implied warranty against ATC and Greenworld. Presently pending before the Court are ATC and Greenworld's motions to dismiss KCC's third-party claims against them under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 188 and 193, respectively.) For the following reasons, the Court GRANTS the motions.

## BACKGROUND

The following facts are derived from the ATPC and Blackhawk's underlying complaint and are taken as true and constructed in the light most favorable to KCC for the purposes of this motion.

### I. Blackhawk's claims against KCC

Blackhawk hired KCC for construction services at its Distribution Center in Orange County, New York ("Distribution Center," "the Project," or "the Property"). (ATPC ¶ 36.) Blackhawk alleges that its contract with KCC required KCC to

> a) install all Work in conformity with approved Drawings and Specifications using its best knowledge as to the interpretation or application of applicable codes; b) notify Plaintiff of any error or inconsistency; c) take field measurements and verify field conditions and carefully compare such field measurements and conditions and other information known to KCC with the Contract Documents before commencing activities; and d) perform the Work in accordance with the Contract Documents and approved submittals.

(Compl. ¶ 17 (citations omitted).) KCC alleges that it "relied exclusively upon [Blackhawk], its agent(s) or its parent company for the design, planning and testing of groundwork and soil compaction relative to excavating and backfilling at the property." (ATPC ¶ 39.) KCC retained subcontractors to perform certain aspects of work for Blackhawk. (*Id.* ¶ 37.)

Beginning on June 17, 2016, Blackhawk suffered damage to its Distribution Center located in Orange County, New York. (ATPC ¶ 35.) Specifically, "a water pipe connection that had been installed by KCC and/or its subcontractor(s) near a break room in the Distribution Center leaked water into the Distribution Center for several hours." (*Id.* ¶ 42 (quoting from Compl. ¶ 8).) "'[A]s

a result of the water leak and/or the work of KCC and/or the work of its subcontractors, the Distribution Center . . . parking lot . . . [and] Northeast corner' sustained property damage." (*Id.* ¶ 43 (quoting Compl. ¶¶ 9–11).)

Blackhawk sued KCC for "costs to date to repair the defects." (Compl., ECF No. 1.) Blackhawk's Complaint alleges that:

> KCC breached its duties under the . . . Contract by its omissions and/or acts, including, but not limited to the following: a) failing to adhere to requirements and/or specifications for composition and type of fill on-site; b) failing to adhere to prohibitions on certain contents of fill; c) failing to adhere to requirements and/or specifications as to compaction of soil; c) failing to adhere requirements and/or specifications as to building support and/or dimensions of lifts or other supports under the building to be constructed at the Project; d) failing to adhere to requirements and/or specifications regarding moisture penetration and/or protection from moisture; e) failure to adhere to requirements and/or specifications regarding contaminants in soil at the site; and f) failure to properly install fittings, couplings, pipes, and/or equipment and/or failure to install proper fittings, couplings, pipes, and/or equipment.

(*Id.* ¶ 18.) Blackhawk further alleges that KCC "and/or its subcontractor(s)" were responsible for the work related to the leaking water pipe, (ATPC ¶ 45 (quoting Compl. ¶¶ 8–11)), and that negligent installation of the water pipe connection caused various forms of property damage (*Id.* ¶ 44).

## II.    KCC's claims against ATC

"[Blackhawk], its agent(s), or its parent company, separately and independently retained geotechnical engineers and subcontractors, including the soil compaction-testing agency, [ATC]." (*Id.* ¶ 38.) "As early as June 2, 2015, KCC recommended that MCKESSON CORPORATION[2] consult with [ATC] for guidance and/or oversight including soil compaction testing relative to excavation work at the Project." (*Id.* ¶ 74.) As early as June 2, 2015, KCC [had also] requested

---

[2] McKesson Corporation ("McKesson") is the parent company of Blackhawk. (ATPC ¶ 40.)

3

that CBRE, INC.[3] consult with [Blackhawk's] subcontractor, [ATC], for guidance and/or oversight including soil compaction testing. (*Id.* ¶ 63.)

Prior to and including June 17, 2016, ATC "performed certain work including testing and monitoring of excavation activities and other related geotechnical engineering services in relation to the construction of Plaintiff's Distribution Center . . . ." (*Id.* ¶ 55.) "During the course of the Project, KCC delegated exclusive responsibility to [ATC] for one or more duties within KCC's agreement with [Blackhawk]." (*Id.* ¶ 56.)

KCC claims in its ATPC that "[i]f the accident, injuries, and damages alleged in the [Blackhawk's] Complaint came about as a result of the negligence of anyone other than the [Blackhawk] itself, then said accident, injuries, and damages came about as a proximate result of the sole negligence and breach of duty of [ATC]." (*Id.* ¶¶ 145, 150.) Simply put, KCC claims that to the extent Blackhawk sustained any damages as alleged in the claims against KCC, then ATC is ultimately liable for any such damages.

### III. KCC's claims against Greenworld

Prior to and including June 17, 2016, Greenworld "performed certain construction and landscaping services in relation to the construction of [Blackhawk's] Distribution Center . . . . (*Id.* ¶ 86.) Greenworld was retained by "SOLICITO & SON CONTRACTING CORP.[4] as a subcontractor to perform plumbing and/or sprinkler system and landscape irrigation work in or near the break room at the Distribution Center, the parking lot of the Distribution Center and/ or the Northeast Corner of the Distribution Center." (*Id.* ¶ 87.) "During the course of the Project,

---

[3] CBRE, Inc. ("CBRE") acted as Blackhawk's agent during the construction of the Distribution Center. (ATPC ¶¶ 41, 58.)

[4] Solicito & Son Contracting Corp. ("Solicito") entered into written agreements with KCC "construction and landscaping services, including an irrigation system and related plumbing, in relation to the construction of [Blackhawk's] Distribution Center . . . ." (*Id.* ¶ 77.)

KCC delegated exclusive responsibility to [Greenworld] either directly or through [Solicito] for one or more duties within its agreement with [Blackhawk]." (*Id.* ¶ 88.)

KCC claims in its ATPC that "[i]f the accident, injuries, and damages alleged in the [Blackhawk's] Complaint came about as a result of the negligence of anyone other than [Blackhawk] itself, then said accident, injuries, and damages came about as a proximate result of the sole negligence and breach of duty of [Greenworld]." (*Id.* ¶¶ 231, 236.) Simply put, KCC claims that to the extent Blackhawk sustained any damages as alleged in the claims against KCC, then Greenworld is ultimately liable for any such damages.

## IV. Procedural Background

Blackhawk filed the instant action against KCC in June 2019. (Compl., ECF No. 1.) KCC answered on October 15, 2019 (Answer, ECF No. 13), and filed a Third-Party Complaint against ATC, Greenworld, and others (Third-Party Compl., ECF No. 14). The Court then granted KCC leave to file an amended Third-Party Complaint, which KCC filed on March 17, 2020. (ATPC, ECF No. 75.) In its ATPC, KCC asserted several claims, including for common law indemnification, contribution, and breach of implied warranty against various parties, including ATC and Greenworld. (*Id.*)

After co-Third-Party Defendants CBRE and McKesson filed separate motions to dismiss similar claims that KCC asserted against them in the ATPC, the Court issued an opinion and order granting their motions. (ECF No. 176.) Specifically, the Court held that (1) KCC's "cursory allegations that it 'delegated exclusive responsibility' for 'one or more duties' to CBRE and McKesson, without specifying which duties [were] insufficient" to state a claim for common law indemnification, (*id.* at 7); (2) Blackhawk's claims against KCC, which seek recovery solely for economic loss, preclude KCC's contribution claims against CBRE and McKesson, (*id.* at 10–11); and (3) KCC's claim for breach of implied warranty against CBRE failed because the ATPC

5

"clearly alleges that CBRE provided services, not goods, in connection with the Project," (*id.* at 11).

After the Court granted them leave to file motions to dismiss in April 2021 (ECF Nos. 178 and 180), ATC and Greenworld filed the instant motions to dismiss in June 2021. (ECF Nos. 188 and 193, respectively.)

## LEGAL STANDARD

Under Rule12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted).

**DISCUSSION**

KCC asserts claims of common law indemnification, contribution, and breach of implied warranty against both ATC and Greenworld. (*See* ATPC ¶¶ 143–158; 229–244.) By their motions to dismiss, ATC and Greenworld argue that, since the Court previously dismissed KCC's similar claims against CBRE and McKesson for failure to state a claim, then the "law of the case" doctrine warrants dismissal of KCC's claims against them. Alternatively, both ATC and Greenworld argue that even if the "law of the case" doctrine does not apply, KCC nonetheless fails to state a claim against them. After due consideration, while it disagrees with ATC and Greenworld that the "law of the case" doctrine applies here, the Court nonetheless agrees that KCC fails to state a claim against them.

**I.      The "law of the case" doctrine does not apply here**

ATC and Greenworld first argue that the "law of the case" doctrine applies here because the same arguments on which the Court relied to dismiss KCC's claims against CBRE and McKesson also support dismissing KCC's claims against them. But such argument relies on a misunderstanding of how the "law of the case" doctrine works.

Under the "law of the case" doctrine, once "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) ("As a general matter, this Court will adhere to its own decision made at an earlier stage of the litigation." (internal quotation marks and citation omitted)). "Law of the case and *res judicata* are closely related legal concepts both resting on policy considerations favoring putting an end to litigation, saving judicial time, and bringing certainty to legal relations. *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)).

"The doctrine of law of the case is similar to . . . *res judicata* in that it limits relitigation of an issue once it has been decided." *Id.* at 148.

To illustrate how the "law of the case" doctrine applies, consider the case of *Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340 JS GRB (Dec. 28, 2011). In that case, the plaintiffs asserted claims under 42 U.S.C. § 1983, among others, alleging constitutional violations arising out of the death of a mentally ill individual while in the custody of private residential mental health facilities. *See Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340 JS GRB, 2013 WL 1209098, at *1–*3 (E.D.N.Y. Mar. 22, 2013). The plaintiffs brought their claims against two private residential mental health facilities and their staff, and against employees of New York state agencies dealing with mental illness treatment and care. *Id.* at *3.

After the state employees moved to dismiss, the Honorable Joanna Seybert dismissed the plaintiffs' claims under § 1983 against them because the private residential mental health facilities were not state actors and their conduct could not be attributable to New York state. *Id.* at *5–*7; *see also Bailey v. City of New York*, 79 F. Supp. 3d 424, 440 (E.D.N.Y. 2015) ("Section 1983 provides a remedy for individuals who have been deprived of their constitutional rights *by one or more government employees or government entities*." (emphasis added)). In other words, because the private residential mental health facilities and their staff were incapable of committing constitutional violations, then the plaintiffs could neither hold New York state nor its employees liable under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("[T]he party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor.").

Months later, the private residential mental health facilities and their staff moved to dismiss the § 1983 claims against them based on Judge Seybert's prior rulings that they were not state

8

actors and their conduct could not be attributable to New York state. *See Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340 JS GRB, 2013 WL 5532649, at *1 (E.D.N.Y. Oct. 3, 2013). Judge Seybert granted their motion to dismiss based on the "law of the case" doctrine because, as mentioned above, her prior rulings precluded holding the private residential mental health facilities and their staff liable under § 1983. *Id.* at *2. In sum, *Romeo* shows that the "law of the case" doctrine applies when litigants seek to benefit from some kind of *res judicata* effect resulting from the court's prior rulings at a later stage resulting within the *same* litigation.

Here, to be sure, KCC's claims and allegations against ATC and Greenworld are substantially identical as those it asserted against CBRE and McKesson. (*See, e.g.*, ATPC ¶¶ 56, 65, 76, and 88.) Furthermore, as the Court will conclude below, it is true that KCC's claims against ATC, Greenworld, CBRE, and McKesson all fail for similar reasons. However, unlike in *Romeo*, the dismissal of KCC's claims against ATC and Greenworld is not dependent on any of the rulings upon which the Court dismissed CBRE and McKesson. Put differently, nowhere does the ATPC suggest, nor do ATC and Greenworld argue, that the Court's rulings in CBRE and McKesson's motion to dismiss establish some kind of *res judicata* effect on any of KCC's claims in the ATPC or on any issue raised in either of the instant motions filed.

Thus, the Court concludes that the "law of the case" does not apply here merely because ATC and Greenworld now raise legal arguments (which challenge similar—but not the exact same—allegations) that CBRE and McKesson raised in successfully dismissing KCC's claims against them. Notwithstanding, as the Court will conclude below, KCC's claims against ATC and Greenworld still fail to state a claim.

## II. KCC's common law indemnification claims against ATC and Greenworld fail

The basic principles of common law indemnity "permit one who is held vicariously liable solely on account of the negligence of another to shift the entire burden of the loss to the actual

9

wrongdoer." *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 453 (1st Dep't 1985). In New York, a party seeking common law indemnity "must show that it may not be held responsible to any degree." *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 25 (1985); *see also Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996) ("common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff"). In other words, "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Dormitory Auth. of the N.Y. v. Caudill Rowlett Scott*, 160 A.D.2d 179, 181 (1st Dep't 1990) (quoting *Trustees of Columbia Univ.*, 492 N.Y.S.2d at 375)). To state a claim for indemnification, a party must allege that it "delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought, and must not have committed actual wrongdoing itself." *Bd. of Managers of Olive Park Condo. v. Maspeth Properties, LLC*, 95 N.Y.S.3d 344, 346 (2d Dep't 2019) (internal quotation mark omitted); *accord 17 Vista Fee Assocs. v. Tchrs. Ins. & Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (1st Dep't 1999). A party cannot obtain common-law indemnification unless it has been held to be vicariously liable without proof of any negligence or actual supervision on its own part. *See McCarthy v. Turner Const., Inc.*, 17 N.Y.3d 369, 377–78 (2011).

After due consideration, the Court concludes that KCC fails to state a plausible common-law indemnification claim against either ATC or Greenworld because its cursory allegations that it "delegated exclusive responsibility" for "one or more duties" to them without specifying which duties are insufficient. Indeed, ATC and Greenworld are correct that even when construing them in the light most favorable to KCC, the allegations in the ATPC themselves indicate that KCC could not have exclusively delegated any duties to them because there was no contractual

relationship between them and KCC. (*See, e.g.*, ATPC ¶ 38 ("[Blackhawk, its agent(s), or its parent company separately and independently retained geotechnical engineers and subcontractors, including . . . [ATC]."); *id.* ¶ 87 ("[Greenworld] was retained by [Solicito] as a subcontractor[.]").) Accordingly, the Court dismisses the common-law indemnification claims against both ATC and Greenworld for failure to assert a plausible claim.

### III.     KCC's contribution claims against ATC and Greenworld fail

CPLR 1401 provides in pertinent part that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." CPLR 1401. When determining whether a party can seek contribution under CPRL 1401, the "touchstone is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Children's Corner Learning Ctr. v. A. Miranda Constr.*, 64 A.D.3d 318 (1st Dep't 2009). Contribution is unavailable when a plaintiff seeks recovery solely for economic loss. *Rockefeller Univ. v. Tishman Constr. Corp.*, 240 A.D.2d 341, 659 N.Y.S.2d 460 (1st Dep't 1997); *see Board of Educ. of the J Constr. City Sch. District v. Sargent, Webster, Crenshaw & Folley*, 71 N. Y.2d 21, 26 (1987) (holding that damages solely economic in nature preclude claims for contribution). Further, "attempts at casting" a claim in tort when they are based on breach of contract will not lead to damages under CPLR 1401. *Structure Tone Inc. v. Universal Svs. Grp. Ltd.*, 87 A.D.3d 909, 911 (1st Dep't 2011) (finding that economic loss in the form of water damage resulting from the breach of contract between general contractor and subcontractor without any allegation of personal injury does not constitute an "injury to property" under CPLR 1401).

Here, KCC's contribution claims against ATC and Greenworld fail for the same three reasons its similar claims against CBRE and McKesson failed. First, the alleged duty of care arose

11

in connection with contractual obligations. Second, the damages sought by Blackhawk for all three claims—breach of contract, breach of warranty, and negligence—are identical: "costs to date to repair the defects," which is how courts define "the appropriate measure of damages for defective construction" under a construction contract. *Marino v. Lewis*, 17 A.D.3d 325, 326 (2d Dep't 2005); *Brushton-Moira Cent. Sch. Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 261-62 (1998) (holding that "the appropriate measure of damages [for breach of a construction contract] is the cost to repair the defects or, if the defects are not remediable, the difference in value between a properly constructed structure and that which was in fact built"). And third, KCC is mistaken that the inclusion of a negligence claim in either the Complaint or the ATPC converts the nature of the damages because "merely charging a breach of a 'duty of due care'. . . does not, without more, transform a simple breach of contract into a tort claim," *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 29 (1987). Accordingly, the Court dismisses the contribution claims against both ATC and Greenworld for failure to assert a plausible claim.

**IV.    KCC's claims against ATC and Greenworld for breach of implied warranty fail**

Lastly, since "there is no cause of action for breach of warranty where the defendant has only provided a service," *Gutarts v. Fox*, 104 A.D.3d 457, 459 (1st Dep't 2013), and the ATPC clearly alleges that both ATC and Greenworld provided services—not goods—in connection with the Project, (*see* ATPC ¶¶ 55, 86–87), the Court must dismiss the claims against them for breach of implied warranty. *See Gutarts*, 104 A.D.3d at 459-50 (dismissing breach of implied warranty claim against party hired to file documents); *see also Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 105 (1954) ("It has long been recognized that, when service predominates, and transfer of personal property is but an incidental feature of the transaction, the transaction is not deemed a sale within the Sales Act," and, therefore, "[t]he essence of the contractual relationship between hospital and patient is . . . human skill and physical materiel of medical science . . . . [c]oncepts of

12

purchase and sale cannot separately be attached to the healing materials—such as medicines, drugs or, indeed, blood—supplied by the hospital for a price as part of the medical services it offers. That the property or title to certain items of medical material may be transferred, so to speak, from the hospital to the patient during the course of medical treatment does not serve to make each such transaction a sale.").

## V.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

KCC has already amended once, after having the benefit of pre-motion letters from ATC and Greenworld stating the grounds on which they would move to dismiss. (*See* ECF Nos. 177 & 179.) Generally, a party's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnote, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a

13

procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, KCC failed to request leave to file a Second Amended Third-Party Complaint or to suggest that it is in possession of facts that would cure the deficiencies that ATC and Greenworld highlighted in the instant motions and that the Court highlighted in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend). Accordingly, the Court will dismiss KCC's claims against ATC and Greenworld with prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Advance Testing Company, Inc. and Greenworld Landscape & Irrigation, Inc.'s motions to dismiss, and DISMISSES all of Krusinski Construction Co.'s claims against them with prejudice. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 188 and 193.

Dated: April 18, 2022
       White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge