UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BLACKHAWK DEVELOPMENT, LLC,

                                    Plaintiff,

             -against-

KRUSINSKI CONSTRUCTION COMPANY,

                                    Defendant.
------------------------------------------------------------------X
KRUSINSKI CONSTRUCTION COMPANY,

                            Third-Party Plaintiff,                **DECISION AND ORDER**

             -against-                                            19 Civ. 5590 (NSR) (PED)

BOYCE EXCAVATING CO., INC., ADVANCE
TESTING COMPANY, INC., SOLICITO & SON
CONTRACTING CORP. and GREENWORLD
LANDSCAPE & IRRIGATION, INC.,

                            Third-Party Defendants.
------------------------------------------------------------------X
BOYCE EXCAVATING CO., INC.,

                            Fourth-Party Plaintiff,

             -against-

LOIODICE EXCAVATING, INC. and
RECLAMATION LLC,

                            Fourth-Party Defendants.
------------------------------------------------------------------X
**PAUL E. DAVISON, U.S.M.J.**

        In or around April 2015, plaintiff Blackhawk Devclopment, LLC hired Krusinski

Construction Company ("Krusinski") as general contractor for construction of a Distribution

Center in Orange County, New York ("the project").  Krusinski hired various subcontractors to

work on the project, including Boyce Excavating Company, Inc. ("Boyce").  Plaintiff directly

retained Advance Testing Company, Inc. ("Advance") to perform soil/fill testing and inspection.[1]

In or around June 2016, a water leak caused damage to the Distribution Center and its

environs.  In June 2019, plaintiff commenced the instant action against Krusinski.  Krusinski

filed a Third-Party Complaint, which it later amended (Dkt. #75), asserting several claims against

various parties, including Boyce and Advance.[2]  On April 9, 2020, Boyce filed its Answer to the

Amended Third-Party Complaint (Dkt. #86), in which Boyce asserted cross-claims against

various third-party defendants, including Advance.

Presently before this Court are two motions pursuant to Rule 15(a) of the Federal Rules of

Civil Procedure ("FRCP"):  (1) Boyce's motion (Dkt. #208) for leave to file an Amended Answer

to the Amended Third-Party Complaint and (2) plaintiff's motion (Dkt. #218) for leave to file an

Amended Complaint joining Advance as a direct defendant pursuant to Rule 15(a) of the Federal

Rules of Civil Procedure ("FRCP").  These motions are before me pursuant to an Order of

Reference for general pretrial supervision dated February 13, 2020 (Dkt. #62).  For the reasons

that follow, both motions are **GRANTED**.

## I.  PROCEDURAL HISTORY

Judge Román entered the initial case management plan on February 13, 2020 (Dkt. #62),

which set March 13, 2020 as the deadline for amending pleadings.  On March 30, 2020, counsel

filed a joint letter motion for an extension of various discovery deadlines – but did not request an

---

[1]  There is a dispute regarding the nature of Advance's services, discussed *infra*.

[2]  By Opinion and Order dated April 18, 2022, Judge Román granted Advance's motion
to dismiss and dismissed all of Krusinski's claims against Advance.  Dkt. #219.

extension of the deadline for amended pleadings.  Dkt. #84.  I granted that motion on April 1, 2020.  Dkt. #85.  On October 21, 2020, I So Ordered an amended case management plan which, *inter alia*, extended the deadline for amended pleadings to November 13, 2020, extended the deadline for joinder of additional parties to December 31, 2020 and set August 25, 2021 as the deadline for completion of all discovery.  Dkt. #156.

The parties proceeded apace with voluminous paper discovery and site inspections, which I monitored by way of regular telephone conferences with counsel.  *See* Minute Entries 12/3/20, 1/13/21, 1/29/21, 3/11/21.  At the next conference (on April 15, 2021), counsel indicated their intention to pursue mediation and requested that depositions be deferred in the meantime.  I directed counsel to firm up the mediation date and file a status letter by May 10, 2021.  *See* Minute Entry 4/15/21.  Ultimately, depositions were put on hold to allow the parties to devote resources to the mediation process.

The first mediation session took place on October 25, 2021.  On November 10, 2021, new counsel was substituted for Boyce.  Dkt. #197, #198.  By letter dated January 17, 2022 (Dkt. #199), Boyce's new counsel stated that the parties had been engaged in discussions with the mediator and a final mediation session was scheduled for April 13, 2022.  Boyce's counsel also sought leave to amend its Answer to the Amended Third-Party Complaint to "update and supplement the factual allegations in Boyce's cross-claims particularly against Advance . . .." Dkt. #199, at 2.[3]  After Advance opposed Boyce's application (Dkt. #202), I set a briefing schedule (Dkt. #204).  On March 21, 2022, Boyce filed its motion to amend (Dkt. #208).

On March 24, 2022, plaintiff requested leave to file an Amended Complaint to add a

---

[3]  Citations to specific page numbers following "Dkt. # __" reflect ECF pagination.

direct claim against Advance (Dkt. #212), based upon information contained in two affidavits

Boyce filed in support of its motion (Dkt. #208-7 (Petersen Affidavit); Dkt. #208-8 (Strang

Affidavit)).  On March 25, 2022, Advance filed its opposition to Boyce's motion.  Dkt. #214.

On March 28, 2022, Advance opposed plaintiff's application (Dkt. #215); I set a briefing

schedule for plaintiff's motion (Dkt. #216).  Boyce filed its reply on March 31, 2022.  Dkt. #217.

On April 14, 2022, plaintiff filed its motion to amend.  Dkt. #218.  Advance responded on April

22, 2022 (Dkt. #221, #222); on April 29, 2022, plaintiff filed its reply (Dkt. #223, #224).


## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure ("FRCP") 21, a court may allow a party to be

added or removed "at any time, on just terms."  Fed. R. Civ. P. 21.  "In deciding whether to

permit joinder, courts apply the same standard of liberality afforded to motions to amend

pleadings under Rule 15."  *Cheng v. Via Quadronno LLC*, No. 20 Civ. 8903, 2022 WL 1210839,

at *2 (S.D.N.Y. Apr. 25, 2022) (quotation marks and citations omitted).  Under FRCP 15(a)(2),

the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).

Notwithstanding this ordinarily lenient standard, leave may be denied "for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Klauber Brothers, Inc.

v. URBN US Retail LLC*, No. 21 Civ. 4526, 2022 WL 1539905, at *11 (S.D.N.Y. May 14, 2022)

(quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)).  "[I]t is within

the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun &

Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

"Where, as here, there is a scheduling order in place that establishes a deadline for

-4-

seeking leave to amend and to join parties, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" *City of Almaty, Kazakhstan v. Sater*, No. 19 Civ. 2645, 2022 WL 1466825, at *3 (S.D.N.Y. Apr. 1, 2022) (quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 1449201 (S.D.N.Y. May 6, 2022). *See also* Fed. R. Civ. P. 16(b)(4). "Whether good cause exists turns on the diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quotation marks and citation omitted). Thus, in order to demonstrate good cause, the movant must demonstrate that, "despite [its] having exercised diligence, the applicable deadline could not have been reasonably met." *Saloman v. Adderley Indus., Inc.*, 960 F. Supp.2d 502, 507 (S.D.N.Y. 2013). Conversely, "[t]he good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *Sherman v. Fivesky*, LLC, No. 19 Civ. 8015, 2020 WL 5105164, at *1 (S.D.N.Y. Aug. 31, 2020) (quotation marks and citations omitted). In deciding whether "good cause" exists, the Court "also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [non-movant]." *Ideavillage Prod. Corp. v. Copper Compression Brands LLC*, No. 20 Civ. 4604, 2021 WL 5013799, at *4 (S.D.N.Y. Oct. 27, 2021) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). If the movant demonstrates good cause under FRCP 16, the Rule 15 standard applies to determine whether leave to amend should be granted. *Beckett v. Incorporated Village of Freeport*, No. 11 Civ. 2163, 2014 WL 1330557, at *5 (E.D.N.Y. Mar. 31, 2014).

### III.  DISCUSSION

A.  Plaintiff's Motion

Plaintiff seeks to join Advance as a direct defendant.  Dkt. #218.  Advance opposes this

motion on three grounds: (1) plaintiff fails to establish "good cause" under Rule 16; (2)

plaintiff's motion is time-barred; and (3) Advance would be unduly prejudiced.  Dkt. #222, at 6-

11.

  *1.  Rule 16 "good cause"*

 Plaintiff does not dispute that the deadline for joinder of additional parties (December

31, 2020) has long expired.  Dkt. #218-1, at 13.  Because plaintiff's application is clearly

untimely, plaintiff is "required to show good cause for [its] failure to propose the amendment

earlier in the proceedings."  *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013).  To that

end, plaintiff contends that information contained in two affidavits Boyce filed in support of its

motion (Dkt. #208-7 (Petersen Affidavit); Dkt. #208-8 (Strang Affidavit)) revealed "a factual

basis indicating that Advance[:] may have failed to perform adequate inspections and tests; failed

to properly document the fill and soil compaction; and failed to monitor construction compliance

with the [p]roject's geotechnical requirements."  Dkt. #218-1, at 8.  More specifically, plaintiff

asserts:

> It was not until March 2022 that Boyce produced the Affidavits of both William
> K. Petersen, PE and Boyce's Vice-President Josh Strang.  Because depositions
> had not yet occurred, Blackhawk had no way of soliciting sworn testimony from
> Boyce's witnesses; receipt of Strang's Affidavit is Blackhawk's first indication of
> how Advance interacted with the contractor, including Advance's responsibility
> for ensuring the accuracy of the contractor's work.

*Id.* at 13.  Plaintiff diligently filed the instant application (Dkt. #212) on March 24, 2022, three

days after Boyce filed its motion (Dkt. #208).  Accordingly, I conclude that plaintiff has

demonstrated good cause for its failure to timely join Advance as a direct defendant.

      *2.  Applicable Statute of Limitations*

      Where jurisdiction is predicated on diversity of citizenship, a federal court sitting in New

York must apply New York statutes of limitations.  *See Thea v. Kleinhandler*, 807 F.3d 492, 497

(2d Cir. 2015).  Advance argues that plaintiff's proposed amendment is futile because plaintiff is

time-barred from joining Advance as a direct defendant "under the three (3) year Statute of

Limitations for a professional malpractice claim."  Dkt. #222, at 6 (citing N.Y. C.P.L.R.

§214(6)).  "The statute of limitations is an affirmative defense on which the defendant bears the

burden of proof."  *Golden v. CPI Assocs., Inc.*, No. 17 Civ. 6856, 2020 WL 2115345, at *5

(S.D.N.Y. May 4, 2020) (quotation marks and citation omitted).  In other words, "a plaintiff is

not required to plead that his or her claims are timely because nonadherence to statutes of

limitations is an affirmative defense."  *Jones v. City of New York*, No. 18 Civ. 1937, 2021 WL

5562694, at *5 (S.D.N.Y. Nov. 29, 2021).  "It is well-established that a statute of limitations

defense may only be resolved on a preanswer motion to dismiss where the complaint alleges

specific information to permit such a finding."  *Golden*, 2020 WL 2115345, at *5 (quotation

marks and citation omitted).  In the case at bar, if plaintiff's proposed amendments set forth facts

which support Advance's statute of limitations defense, this Court "does not have to wait for a

motion to dismiss, and waste judicial time and resources, but may instead deny a motion to

amend to add time-barred claims as futile."  *Jones*, 2021 WL 5562694, at *5 (quotation marks

and citation omitted).

      Here, plaintiff's proposed First Amended Complaint sets forth the following allegations

against Advance:

> • Plaintiff contracted with Advance[4] to provide various services for the project, including testing and inspection services and providing equipment and laboratory testing. Dkt. #218-17, at 5, ¶¶ 13, 15.

> • Advance "caused or contributed to the damages (including, for example, consolidation and/or subsidence of subsurface soils or material) by failing to apply an appropriate testing/inspection protocol consistent with the [p]roject's requirements." *Id.* at 6, ¶ 22.

> • Advance is liable for breach of contract because it:
> -failed to provide sufficient quantity and quality of inspections and tests ("For example, Advance failed to perform an adequate number of laboratory moisture-density tests for density control of the earthwork volume; failed to perform an adequate quantity of in-situ density and moisture testing pursuant to its contract, to verify whether appropriate fill compaction was achieved; and failed to perform Proctor tests for density control. Advance failed to develop an earthwork quality control plan that defined the quality control testing to be performed; failed to establish appropriate, objective testing and monitoring to ensure that the [p]roject's earthwork requirements were satisfied; and utilized a testing frequency that was not in accordance with its contractual responsibilities.") (*Id.* at 10, ¶ 46):
> -failed to adequately document Krusinski's work (*Id.* at 11, ¶ 47);
> -failed to undertake adequate field reports and compaction records (e.g. failed to properly document descriptions of fill materials and compaction equipment used) (*Id.*);
> -failed to comply with, monitor for compliance of, and enforce application of project requirements articulated by the geotechnical engineer for the [p]roject (*Id.* ¶ 48);
> -failed to notify plaintiff of deviations from, or deficiencies concerning, the project's earthwork requirements (*Id.* ¶ 49); and
> -failed "to ensure that the [p]roject's earthwork compaction was uniform; failed to perform certain testing to assess the bearing pressure for the [p]roject's warehouse foundation; failed to take sufficient steps to ensure that the [p]roject's fill compaction met the required 95% modified Proctor maximum density criteria; and otherwise failed to perform its contractual responsibilities ultimately leading to its failure to discover the contractors' deficient earthwork compaction" (*Id.* ¶ 50).

*    *    *

---

[4] According to plaintiff, two separate agreements governed its relationship with Advance: the "April 2015 Agreement" and the "December 2015 Agreement." Dkt. #218-17, at 5, ¶¶ 13-16.

Advance asserts: "While the cause of action may be titled 'breach of contract' the

allegations plead therein leaves no doubt that it is a professional liability claim." *Id.* at 7.

"While breach of contract claims are generally subject to a six-year statute of limitations, any

'action to recover damages for malpractice, other than medical, dental or podiatric malpractice,

*regardless of whether the underlying theory is based in contract or tort*' must be commenced

within three years." *BankUnited, N.A. v. Merritt Env't Consulting Corp.*, 360 F. Supp.3d 172,

184 (S.D.N.Y. 2018) (emphasis in original) (citing N.Y. C.P.L.R. § 214(6)).  Whether CPLR

§214(6)'s three-year statute of limitations applies turns on whether plaintiff's allegations

establish that Advance is a "professional" under the statute.  *See BankUnited*, 360 F. Supp.3d at

185.  That analysis "is complicated by the fact that, in CPLR 214(6), 'malpractice' is undefined

and 'professional' unmentioned."  *Chase Sci. Rsch., Inc. v. NIA Grp., Inc.*, 96 N.Y.2d 20, 28, 749

N.E.2d 161, 165, 725 N.Y.S.2d 592, 596 (2001).  However, the New York Court of Appeals has

defined the term "professional" for purposes of § 214(6):

> The qualities shared by [architects, engineers, lawyers or accountants] guide us in
> defining the term "professional."  In particular, those qualities include extensive
> formal learning and training, licensure and regulation indicating a qualification to
> practice, a code of conduct imposing standards beyond those accepted in the
> marketplace and a system of discipline for violation of those standards.
> Additionally, a professional relationship is one of trust and confidence, carrying
> with it a duty to counsel and advise clients.

Id. at 29, 749 N.E.2d at 166, 725 N.Y.S.2d at 597 (internal citations omitted).

Here, plaintiff alleges that it hired Advance to perform testing and inspection services and

to provide equipment and laboratory testing.  Advance's Fee Schedule (attached to the Service

Agreements) lists fees under the headings "Technician Rates" and "Equipment and Laboratory

Testing." Dkt. #218-15, at 9-10; Dkt. #218-16, at 4-5.[5]  Although the Fee Schedules also include

a single line item rate of $125.00/hour for "Professional Engineer," (Dkt. #218-15, at 9; Dkt.

#218-16, at 4), Advance's "Updated Project Estimate" is based upon fees for a Steel and Welding

Technician, a Concrete Technician, and Rebar Technician, an Asphalt Technician, a Nuclear

Density Gauge and testing of the Compressive Strength of Concrete Cylinders. Dkt. #218-16, at

6.  Further, according to plaintiff's allegations, Advance was hired to inspect and test to ensure

compliance with *project requirements articulated by the project's geotechnical engineer.* I also

note that the April 2015 Service Agreement states that Advance is an "independent contractor"

and required Advance to maintain Worker's Compensation Insurance during performance of its

services and for one year thereafter. Dkt. #218-15, at 4-5.

In sum, in my view, plaintiff's allegations in its proposed First Amended Complaint do

not support Advance's statute of limitations defense. *Cf. BankUnited*, 360 F. Supp.3d at 185-86

(applying CPLR 214(6) where plaintiff alleged (1) that it hired defendants to perform services "in

a manner consistent with that level of care and skill ordinarily exercised by other professional

consultants," (2) the contracts "recognized that professional standards and ethics govern" the

services defendants were to provide, (3) defendants' employees were "Environmental

Professionals" and (4) plaintiff's relationship with defendants was one of "trust and confidence"

---

[5]  Evaluation of the statute of limitations issue requires the Court, in essence, to ascertain whether the proposed First Amended Complaint would withstand a motion to dismiss.  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *Peter Allen v. Carl Koenigsmann*, No. 19 Civ. 8173), 2022 WL 1597424, at *3 (S.D.N.Y. May 19, 2022) (quoting *Asarco LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014)).  Here, the proposed First Amended Complaint incorporates both Service Agreements by reference. Dkt. #218-17, at 5, ¶¶ 13-16. Thus, I may consider both agreements in evaluating plaintiff's motion to amend.

because plaintiff hired defendants to "counsel and advise" and relied on their expertise);

*Panteleone v. Env't Eng'g & Contracting*, No. 12 Civ. 5415, 2013 WL 3340483, at *4 (E.D.N.Y.

July 2, 2013) (applying CPLR 214(6) where plaintiffs alleged (1) that defendants were hired as

environmental consulting professionals, (2) defendants failed to perform the services for which

they were hired with the applicable "professional duty, skill, diligence, prudence, and care of

keeping the information confidential," and (3) the parties entered into a professional relationship

of trust and confidence).  Accordingly, I reject Advance's argument that plaintiff's proposed

amendments are futile.

> *3.  Undue Prejudice*

Finally Advance argues that it would be unduly prejudiced if plaintiff is allowed to join

Advance as a direct defendant, because:

> [Advance] has already expended tremendous time and effort in defending
> [Krusinski's Amended Third-Party Complaint] which included a 12(b)(6) motion
> that was recently granted and has also reviewed in excess of 60,000 ESI
> documents exchanged by the parties. [Advance] would essentially be forced to
> review the ESI again through a different lens and expend a significant amount of
> time, effort and resources that would cause further delay to the resolution of this
> matter.

Dkt. #222, at 11.  Advance "bears the burden of demonstrating that substantial prejudice would

result if the proposed amendment were granted."  *Cook v. City of New York*, 243 F. Supp.3d 332,

355 (E.D.N.Y. 2017) (quotation marks and citations omitted).  "In deciding whether undue

prejudice exists to warrant denial of a motion to amend, courts must evaluate whether the

amendment would:  (I) require the opponent to expend significant additional resources to conduct

discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii)

prevent the plaintiff from bringing a timely action in another jurisdiction.  *Id.*  (quotation marks

and citations omitted).  However,  "allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 174 (S.D.N.Y. 2014) (quotation marks and citations omitted).  In other words, "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Id.* (quotation marks and citations omitted).  Further, "[a]ny prejudice which the non-movant demonstrates must be balanced against the court's interest in litigating all claims in a single action and any prejudice to the movant which would result from a denial of the motion." *Lichtman v. Whole Foods Market Group, Inc.*, No. 21 Civ. 82, 2022 WL 1645658, at *3 (E.D.N.Y. May 24, 2022) (quotation marks and citation omitted).

I am not persuaded that Advance would be unduly prejudiced by plaintiff's proposed amendments.  Advance has been a party to this lawsuit since October 2019, when Krusinski filed its Third-Party Complaint.  Although Krusinski's claims against Advance were recently dismissed, Boyce's cross-claims against Advance remain.  Advance argues that it will be forced to expend a significant amount of additional time, effort and resources if it is forced to defend plaintiff's proposed direct claims – which is not sufficient, by itself, to warrant denial of plaintiff's motion.  Moreover, Advance's defense of Boyce's cross-claims logically requires Advance to demonstrate that it sufficiently performed its services – which overlaps, at least to some degree, its defense to the proposed direct claims brought by plaintiff.  Advance also argues that the amendment would "further delay" resolution of this matter.  However, no depositions have been conducted, expert reports have not yet been exchanged, summary judgment motion deadlines have not been established and no trial date has been set.  At bottom, Advance fails to

demonstrate that it would be unduly prejudiced if plaintiff is allowed to join Advance as a direct defendant.

Accordingly, plaintiff's motion to amend is GRANTED.

B.  <u>Boyce's Motion</u>

Boyce seeks to add factual allegations in support of its cross-claims against Advance, based upon the affidavit of their expert, William K. Petersen, P.E. (dated January 13, 2022) "and the documents referenced therein," including the affidavit of Boyce's Vice President, Josh Strang (also dated January 13, 2022).  Dkt. #208-18, at 4 (ECF pagination).  Advance opposes this motion on a single ground: that Boyce has failed to satisfy Rule 16's "good cause" requirement.  Dkt. #214, at 5 (ECF pagination).  Advance specifically argues that the various documents cited by Boyce in support of its application were exchanged well before the November 13, 2020 deadline, and points out that Boyce "had access to their own witnesses and experts well before the deadline." *Id.*

Boyce does not dispute that the deadline for amended pleadings (November 13, 2020) has long expired.  Dkt. #208-18, at 7.  In Boyce's initial leave application (dated January 17, 2022), Boyce's new counsel (who entered the case on November 10, 2021) asserted that amendment was necessary because "we have become aware of critical facts" bearing on Advance's liability to Boyce.  Dkt. #199, at 3.  In its letter response to Advance's initial letter opposition, Boyce clarified that its request for leave to file a motion to amend was "based on information obtained during the exchange of discovery and inspection of the premises."  Dkt. #203, at 1.  In its motion to amend, Boyce asserts that the allegations in its proposed Amended Answer "are supported by the Affidavit of William K. Petersen, P.E., dated January 13, 2022, and the documents referenced

therein," including the Affidavit of Boyce's Vice President, Josh Strang, dated January 13, 2022.

Dkt. #208-18, at 4.  I note that Boyce's counsel obtained the supporting affidavits four days prior

to its initial leave application, for the specific purpose of supporting its leave request (Dkt. #199,

at 4); I also note that the documents Mr. Petersen purportedly relied upon (except for the Strang

Affidavit) were obtained by prior counsel much earlier in the course of discovery.  In sum, it

seems quite clear that Boyce's untimely decision to amend was prompted by new counsel's

reassessment of facts known much earlier.  Accordingly, Boyce fails to demonstrate good cause

for its failure to file its motion by the deadline imposed by the court.

Nonetheless, as Boyce points out, "where the amendment is not prejudicial, district courts

in this Circuit have held they have discretion to grant a motion to amend even where the moving

party has not shown diligence in complying with a deadline for amendments in a Rule 16

scheduling order." *Ideavillage Prod. Corp. v. Copper Compression Brands, LLC*, No. 20 Civ.

4604, 2021 WL 5013799, at *4 (S.D.N.Y. Oct. 27, 2021).  Thus, Boyce argues that its motion

should be granted because Advance does not contend it would be prejudiced by Boyce's

proposed amendment.  Dkt. #217-2, at 2 (ECF pagination).  Considering the particular posture of

this litigation, I agree.  Given the lack of prejudice to Advance if Boyce were allowed to amend,

it would be patently unfair to deny Boyce's motion in the face of granting plaintiff's motion to

amend – which was based upon the Petersen and Strang affidavits Boyce provided in support of

its motion.  Accordingly, in the exercise of my discretion, Boyce's motion to amend is

GRANTED.

## IV.  CONCLUSION

For the foregoing reasons: (1) Boyce's motion for leave to file an Amended Answer to the

Amended Third-Party Complaint is **GRANTED**; and (2) plaintiff's motion for leave to file an

Amended Complaint joining Advance as a direct defendant is **GRANTED**.


      Plaintiff and Boyce shall file their amended pleadings within seven days of the date of

this Decision and Order.


      The Clerk of the Court is directed to terminate the pending motions (Dkt. #208 and Dkt.

#218).


Dated:  June 1, 2022                **SO ORDERED.**
       White Plains, New York

                                     PAUL E. DAVISON, U.S.M.J.